Peter T. Panaretos, et al.
vs.    Eq. No. 6878
James Gatsos, et als.

December 2, 1927.

BAKER, J. Heard on exceptions to a Master's report.

The respondents at the hearing first claimed that the Master had failed to comply with Equity Rule No. 40 of the Superior Court, providing for the submitting of a draft of his reports to the parties for hearing thereon.

The Court is of the opinion that this matter can not now be urged. It would have been proper and undoubtedly better practice for the respondents, when the report was filed, to have moved that it be recommitted for the above reason. Apparently they did not do this but proceeded to file exceptions to the report as filed, and therefore, it would seem, have waived whatever rights they may have had by reason of the failure to comply with said rule. Moreover, the matter has been presented fully to the Court for determination and the Court has therefore proceeded to consider the questions raised by the respondents' exceptions.

The report of the Master is very brief and of little aid to the Court. At the hearings considerable testimony was taken and a very large number of exhibits introduced, consisting chiefly of checks, check books, account books, and the like. The facts show that eight men decided to form a partnership for the purpose of conducting a restaurant business in the city of Pawtucket. Two of the men never signed the articles of co-partnership.

One of these two did put in some money but, soon after the business started, withdrew. The restaurant, therefore, actually was conducted by six men, two of whom are complainants and four are respondents in the present proceeding.

It appears clearly from the testimony that the two complainants, and particularly Peter T., were the men with the financial backing. They conducted a restaurant at Onset, Massachusetts, and also had a business in the city of New Bedford. The affairs of the partnership did not run very well and after about ten months' operation, a receiver was appointed and the business closed out. The present questions before the Court relate to the matter of the accounting between the partners growing out of the conduct of the business.

The Master found that the respondents were indebted to the complainants in the sum of $4,337.54. It is admitted by all the parties that this amount is somewhat large and the complainants now urge that the amount due them is $3,471.70. The respondents, on the other hand, insist that the complainants owe them between $2,500 and $2,600.

After examining the exhibits and going over the testimony with care, the Court has come to the conclusion that, owing to the way the business was conducted and the state of the records relating to it, and to the conflicting nature of the testimony, it is probably impossible to make an absolutely accurate account in this case, but the Court believes that the figures it has reached will in the main be as nearly correct as possible and will do substantial justice between the parties.

The Court finds that the complainants are not indebted to the respondents in any sum. In this connection respondents' claim rests chiefly on a so-called account prepared by one Saltis (see Respondents' Exhibit 104). There is nothing in the case to show how this account was made up or from what source the figures were obtained. It apparently is nothing more nor less than a summing up of the expenses and the receipts, together with the addition of a few other items. It does not seem to take into consideration the fact that without question the complainants did make certain advances to the partnership. The Court is clearly of the opinion that this account prepared by Saltis is of little or no value in this proceeding. He was not called as a witness although he was friendly with the respondents. The testimony that the complainants agreed to pay about $2,600 if the account should be taken to New Bedford does not seem worthy of credence. It is denied by the complainants.

Each side claims that the other handled the money and really managed the enterprise. An examination of the testimony seems to reveal that most of the time the respondent Gatsos was in charge of the restaurant in Pawtucket. The complainant Peter T. did not devote his whole time to this business although unquestionably he was in and out of the restaurant many times a week. When he was there, he did exercise a certain amount of oversight. He also handled some of the money, attended to the accounts and drew many checks. It seems pretty clear to the Court, however, that the complainant Peter T. and the respondent James Gatsos were about on an equal footing as far as the management of the business went, and that all of the parties had approximately the same knowledge of what was being done.

In regard to specific items, the Court finds the following to be the situation.

There can be no doubt that the co-partnership is indebted to the complainants for the sum of $2000 advanced by them in September, 1923, when the business started. This loan was provided for in the articles of co-partnership and it was to carry 8%.

It is also clear that it never was repaid to the complainants. The interest on this sum from September 10, 1923, to July 18, 1924, when the business went into the hands of a receiver, is approximately $136.84.

It also seems to the Court that the preponderance of the testimony shows that the complainants in May, 1924, when the business was failing, advanced in New Bedford the sum of $1000 to help pay the bills. The respondents urge very strongly that this sum was not advanced to the partnership and call the Court's attention to a certain difference in the handwriting on the check. It seems to the Court, however, that the weight of the evidence supports the complainants in this matter and the Court will allow this item.

There also is little doubt that the complainants advanced $100 in September, 1923, as a payment on the ice chest used by the partnership, and in March, 1924, paid $107.67 on account of a note given for restaurant equipment.

Further, the Court will allow the complainants' claim of $200, being the check of P. M. Panaretos to cover a shortage in the restaurant accounts in March, 1924. The respondents contest this payment but it appears to the Court that the weight of the testimony shows clearly that such an advance was made. There is also, in the judgment of the Court, sufficient testimony to support the claim that P. T. Panaretos advanced in cash the sum of $200 to assist the business. Also there is little doubt that the Paine note for $300 was paid by the complainants. The Court will also allow the sum of $20 which grew out of a protested check of the partnership.

It appears from the testimony that a loan of $500 at 9% was made from one O. H. Rounds, the interest being deducted in advance, so that the net sum received by the partnership was $455. The accounts and the testimony show clearly that the partnership paid back $280 of this, leaving the sum of $175 which was paid by the complainants and which, in the judgment of the Court, they have a right to charge against the partnership.

The complainants also have an item of $846.80 for materials furnished the restaurant and for 38 trips of their truck from New Bedford to the restaurant in Pawtucket. The respondents seriously contest this claim, calling attention in particular to the large number of barrels of apples delivered. The Court has examined this item and while, perhaps, the details are not as clear as might be desired, still in the opinion of the Court the testimony shows plainly that the complainants' truck did make deliveries at the restaurant at least once a week, if not oftener, and after considering the matter with care, the Court can not say that the sum charged is unreasonable and the Court will allow that item.

The above items referred to make a total of $5,086.31, which the Court finds is the sum of advanced by the complainants to the partnership. In this connection in many instances the respondents do not seriously contest several of said claims and as to others take the position that they do not know about them.

The complainants make certain other claims which the Court does not allow. The Court finds that they are not entitled to the claim for $17 paid one Sumaris. This man was employed by the partnership for only a few weeks and whatever he did after that, in the opinion of the Court was done personally for the complainants. The item of $200 on notes endorsed by the complainants is not allowed by the Court. It does not appear satisfactorily just what this item covers, nor that, at the time of the hearing, the complainants had been compelled to pay out this money.

The claim of $570 for the purchas-

ing of the interest of one Minas Pana-
retos in the firm is not allowed as a
charge against the partnership. It ap-
pears that the articles of co-partner-
ship provided that if any partner
shall desire to retire, he shall give
three months' notice in writing, and
when this period shall have expired or
sooner, at the option of the other
partners, the interest of the retired
partner shall be determined and he
shall be paid the value of his share.
Nothing in the evidence shows that
this procedure was followed out. It
does not appear whether the interest
of Minas at the time he withdrew was
more or less than his original deposit
of $500. Further, it is a peculiar co-
incidence that while he retired in
November, 1923, the receipt given the
complainants is not dated until July,
1924, approximately the time of the re-
ceivership. If the interest of Minas
was purchased by the complainants, it
seems to the Court that the testimony
shows that it was a personal matter
between the parties and that the com-
plainants were not acquiring such in-
terest for the benefit of the firm.

A further consideration of the testi-
mony reveals that certain sums are
due from the complainants to the part-
nership in the accounting. The com-
plainants admit owing $710.76, but the
Court finds that this amount should
be $996.96, which it makes up as fol-
lows:

There are two payments from the
partnership fund made by the com-
plainants relating to their truck,
namely, the sum of $43.80 and the sum
of $15. This was their own personal
matter and did not relate to the part-
nership although the payment was
made from the partnership fund. Fur-
ther, there were payments aggregating
$75 made to one Sumaris, and other
payments aggregating $38 to the same
man, which in the judgment of the
Court should be charged against the
complainants. It is clear from the
testimony that this man worked for
the partnership for a short time only
and that thereafter his work was for
the complainants. Payments to him
from the partnership funds were there-
fore improper. In this matter there
seems to be some question as to
whether a certain check is for the sum
of $133 or $33. The check itself ap-
pears to be for $33, and the Court
finds that this is the correct sum.

In addition to the these sums, the
exhibits and the testimony show that
the complainant Peter T. was in the
habit of drawing checks to himself and
for his account from time to time. One
of these checks for $143.96 the com-
plainants admit should be charged
against them. There are other numer-
ous small payments, chiefly of $10 and
$20, and occasionally of $50, from the
partnership funds which, in the judg-
ment of the Court, the complainants
were not entitled to make. These
sums, together with $100 drawn in two
checks of $50 from the partnership
funds to the Onset Lunch, should also
be charged against the complainants
and make in all the sum of $825.16.

The articles of co-partnership them-
selves provided that all of the partners
with the exception of Peter T. should
be allowed to draw from the business
$10 per week. Apparently the com-
plainant Peter T. nevertheless took
$10 a week frequently from the part-
nership contrary to the agreement of
the partners. Many of the items above
referred to by the Court cover this
matter.

These payments can not properly be
considered as any distribution of
profits because for a long time the
partnership was running at a loss.
Moreover, it clearly appears from the
records that there was no such dis-
tribution to the other partners by way
of profit, so, therefore, these amounts
should be charged to the complainants,
in the opinion of the Court, as above
indicated.

There is a large item which the re-
spondents very seriously urge should

be figured against the complainants. They contend that the complainant Peter T. agreed orally, before the articles of co-partnership were drawn up, to pay a penalty of $5 a day because he could not devote his whole time to the business. The Court has examined the testimony relating to this contention and finds that the weight of the evidence does not support any such claim. The making of any such agreement by the complainant Peter T. would be most improbable. Further, if there was any such oral understanding, it is very strange that it was not included in the articles of co-partnership when they were drawn up. The respondents' testimony in this connection seems to the Court unbelievable. Further, it is clear that the complainant Peter T. did, as a matter of fact, visit the restaurant in Pawtucket several times a week and did take an active part in the conduct of its business. An examination of all the testimony in this connection convinces the Court that the respondents are not entitled to this claim relating to $5 per day from the complainant Peter T.

There is one other item which the respondents urge should be charged to the complainants, and this is the sum of $500 which passed through the partnership books. The Court believes, however, that it is clear that Mr. Panaretos merely made a personal loan of $500 from the bank in Pawtucket and that for the sake of convenience this sum was checked out through the accounts of the restaurant, and that it really had nothing to do with the restaurant business itself. For this reason the Court finds that this sum should not be charged against the complainants in arriving at the present account. It seems quite clear from the evidence that several of the partners knew all about this matter, and raised no question concerning it.

To conclude, therefore, the Court finds that the complainants advanced to the partnership the sum of $5,086.31, which can properly be charged in their favor in this account. To be deducted from that is the sum of $996.96 which the Court finds that they, in turn, owe the co-partnership, leaving the sum of $4,089.35 which the co-partnership owes the complainants.

As there were six partners in this partnership and as the complainants constitute two and the respondents four of said partners, it seems clear that the respondents owe the complainants four-sixths of said sum of $4,089.35, which said proportion amounts to $2,726.24, which sum the Court hereby finds is due and owing from the respondents to the complainants.

The first, second, sixth and eighth exceptions of the respondents to the Master's report are sustained.

For complainants: Frank H. Bellin.

For respondents: Stephen J. Casey.